# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ROBERT BATES, | Case No. 1:16-cv-534 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| ROMAN SHOSTAK, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Plaintiff, an incarcerated individual who proceeds *pro se*, filed suit against four individuals employed at the Warren Correctional Institution, alleging that the Defendants used excessive force against him during an incident that occurred on or about February 12, 2015.[1] On August 21, 2017, Defendants filed a motion for summary judgment, to which Plaintiff filed a response in opposition. The undersigned now recommends that Defendants' motion be GRANTED.

**I.   Background[2]**

Plaintiff's complaint alleges that he was seriously injured by four Defendant officers (Shostak, Dunn, Back and Wilson), during a time when Plaintiff was being housed on a residential treatment unit for inmates with mental health issues. The incident began with a verbal altercation between Plaintiff and Defendant Shostak, who was outside Plaintiff's cell. At some point, Plaintiff's cell window was covered,

---

[1] Plaintiff was later moved to the Southern Ohio Correctional Facility, where he currently remains.
[2] Most of the same background was previously related in a prior Report and Recommendation that denied Plaintiff's earlier motion for summary judgment. (Docs. 22, 36). Although Defendants advocate for findings of fact based upon the evidence submitted in support of their motion for summary judgment, the undersigned finds no need to review that evidence in light of the analysis of the procedural issues presented.

preventing Officers from seeing Plaintiff, although the parties dispute whether Plaintiff or Defendants themselves obscured the window. As the incident progressed, Defendants Shostak and Dunn entered Plaintiff's cell and allegedly punched and "maced" Plaintiff, dragging him out of the cell. Plaintiff alleges that Defendant Wilson used excessive force including smashing his head against a glass door in a hallway en route to Inmate Health Services ("IHS"), and that Defendant Back later tightened his handcuffs to the point where Plaintiff's circulation was cut off. Plaintiff also alleges that one or more of the officers used excessive force against him out of camera's view, while Plaintiff was in IHS.

A copy of an institutional report entitled "Investigation Summary Report Use of Force" ("UOF report") is attached to Plaintiff's complaint. The report generally contains witness statements, and reflects that after an initial struggle in his cell, Plaintiff was handcuffed and removed from his cell. During his escort by Officers Wilson and Hake, the report states that Inmate Bates turned toward Officer Hake, causing Officer Wilson to "quickly push[] inmate Bates through the door and into the wall past the door." (Doc. 15 at 3). The report further states that while Inmate Bates was "struggling," Defendant Officer Wilson "administered a knee strike to the side of inmate Bates." (*Id.*).

In his complaint, Plaintiff alleges that all four officers applied excessive force in violation of the Eighth Amendment, and/or are liable for failing to protect him from excessive force. Plaintiff further alleges that the officers falsified reports during the institutional investigation, and that he suffered serious injuries. Plaintiff alleges that he was transported to the hospital after he lost consciousness, where he alleges that he spent a week in recovery. (Doc. 3 at 13). He alleges that he continued to suffer ill

effects from his purported concussion upon his return from the hospital, and has had to undergo speech therapy three times per week as a result. (Doc. 3 at 8).

Prior to initiating this federal lawsuit, on May 1, 2015, Plaintiff filed suit against the Ohio Department of Rehabilitation and Correction in the Ohio Court of Claims. (*See generally* Doc. 30-12, docket sheet at 1). The state court granted summary judgment to the Defendants on February 12, 2016. Thereafter, Plaintiff filed a late notice of appeal. On April 20, 2016, the Ohio Court of Appeals denied Plaintiff leave to file a delayed appeal and dismissed the appeal *sua sponte*. Following the dismissal of his state court appeal, on May 9, 2016, Plaintiff initiated suit in this Court.

The existence of the prior state court lawsuit was not disclosed to this Court by Plaintiff. (*See* Doc 1-1 at 2, responding "No" to a question asking if Plaintiff has begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to his imprisonment). Having discovered the prior proceeding, Defendants rely upon the prior state court judgment as a basis for granting judgment in this case.

**II.   Analysis**

   **A. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

### B. Defendants' Motion for Summary Judgment

Defendants first argue that they are entitled to judgment as a matter of law on procedural grounds, because: (1) this Court lacks jurisdiction under the *Rooker-Feldman* doctrine; (2) Plaintiff's claims are barred by the doctrine of collateral estoppel; and (3) Plaintiff has waived his right to sue in federal court under the *Leaman* doctrine. To the extent that the Court does not rule in their favor on procedural grounds, Defendants alternatively argue in favor of summary judgment on the merits, arguing that no Defendant violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment; and that all Defendants are entitled to qualified immunity.

Plaintiff's response in opposition to Defendants' motion maintains that genuine issues of material fact exist that preclude entry of judgment in Defendants' favor on either qualified immunity or the underlying Eighth Amendment clams. However, Plaintiff has failed to address any of the first three arguments, all of which are based upon the existence of the prior state court judgment. Although two of Defendants' procedural

4

arguments are unconvincing, the undersigned finds one of Defendants' procedural arguments to be dispositive.

### 1. The *Rooker-Feldman* doctrine is Inapplicable

Defendants first argue that Plaintiff's federal claims are "inextricably intertwined" with the prior state court judgment, such that this Court lacks jurisdiction under the *Rooker-Feldman* doctrine. (Doc. 30 at 7). However, Defendants misinterpret the doctrine, which does not bar this Court's jurisdiction over Plaintiff's lawsuit.

The *Rooker–Feldman* doctrine states that only the Supreme Court of the United States has jurisdiction to review a case litigated and decided in a state court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983); *Gottfried v. Medical Planning Services*, 142 F.3d 326, 330 (6th Cir.1998). The doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

In *Exxon Mobil Corp.*, the Supreme Court clarified that the doctrine is a narrow one, that "does not otherwise override or supplant preclusion doctrine." *Id.* Following *Exxon Mobil Corp.*, published decisions by the Sixth Circuit and lower courts within this Circuit have limited application of the doctrine to instances in which the litigant *only* seeks to reverse or set aside the state court judgment. The Sixth Circuit has cautioned against the overbroad use of phrases like "inextricably intertwined" by defendants seeking to expand a doctrine that the Supreme Court has clearly limited:

5

> In *Exxon,* the Supreme Court implicitly repudiated the circuits' post-*Feldman* use of the phrase "inextricably intertwined" to extend *Rooker–Feldman* to situations where the source of the injury was not the state court judgment. In short, the phrase "inextricably intertwined" only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman. See Davani,* 434 F.3d at 719; *Hoblock,* 422 F.3d at 86–87 ("But the phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil.*").
>
> We stress that the *Rooker–Feldman* doctrine is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap.

*McCormick v. Braverman*, 451 F.3d 382, 394–95 (6th Cir. 2006) (holding doctrine did not bar §1983 action for claims that did not allege that state court judgment in and of itself violated federal Constitution or federal law). Thus, if a litigant presents a claim that is "in any way independent of the state-court judgment" such as "claims based on alleged violations of federal and state law" that are independent of alleged deficiencies in the state-court proceedings, a federal court will have jurisdiction. *See Miller v. Countrywide,* 747 F.Supp.2d 947, 956–958 (S.D. Ohio 2010); *see also Todd v. Wellman, Weinberg, & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006).

Here, Plaintiff's federal complaint includes no claim whatsoever that the state court judgment against him is unconstitutional or in violation of federal law. If anything, Plaintiff has deliberately *avoided* attacking the state court judgment in this Court, considering that he concealed the existence of the prior lawsuit. (*See* Doc 1-1 at 2, responding "No" to a question asking if Plaintiff had filed any other state or federal lawsuits dealing with the same facts). Plaintiff alleges independent federal jurisdiction under 42 U.S.C. § 1983 for the alleged violations of his constitutional rights. Under

such circumstances, the Sixth Circuit has made clear that the *Rooker-Feldman* doctrine does not apply to preclude subject matter jurisdiction in federal court. Rather, the court should assume jurisdiction and look to state law to determine "whether the defendant prevails under principles of preclusion." *McCormick*, 451 F.3d at 392, quoting *Exxon Mobil Corp*, 125 S.Ct. at 1527.

### 2. Collateral Estoppel Should Be Applied

Defendants' second argument, that all of Plaintiff's claims are barred by collateral estoppel notwithstanding the existence of federal subject matter jurisdiction, is more persuasive. "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal courts to give state court judgments the same preclusive effect that the state would afford such judgments." *McCormick*, 451 F.3d at 397 (holding that collateral estoppel still barred Plaintiff's claims despite the fact that the *Rooker-Feldman* doctrine did not preclude subject matter jurisdiction); *see also generally Montana v. United States*, 440 U.S. 147, 99 S. Ct. 970 (1979).

Ohio courts apply the doctrine of collateral estoppel to preclude relitigation of any issue previously litigated, even if based on a different cause of action. *State ex rel. Nickoli v. Metroparks,* 124 Ohio St.3d 449, 453, 923 N.E.2d 588 (Ohio 2010) (internal citations omitted).

> Issue preclusion or collateral estoppel "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." …While claim preclusion bars re-litigation of the same cause of action, issue preclusion bars the re-litigation of an "issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action."

7

*Ohio Kentucky Oil Corp. v. Nolfi*, 5 N.E.3d 683, 693, 2013 -Ohio- 5519, ¶ 36 (Ohio Ct. App. 2013) (quoting *Ft. Frye Teachers Assn. v. State Employment Relations Bd.*, 81 Ohio St.3d 392 at 395, 692 N.E.2d 140 (Ohio 1998)). For collateral estoppel to apply under Ohio law, then, this Court must determine (1) if the issues presented in this federal case were actually and directly litigated in the prior action; (2) if a final judgment on the merits was rendered by a court of competent jurisdiction, and (3) if the person against whom collateral estoppel is asserted was either a party or in privity with a party to the prior action. *Thompson v. Wing*, 70 Ohio St.3d 176, 637 N.E.2d 917, 923 (Ohio 1994).

All of the requisite elements are present in this case. There is no dispute that Plaintiff's complaint in state court is based upon the same facts. His state court complaint alleges that on February 12, 2015, Officer Shostak covered the outside of Plaintiff's cell window, and subsequently entered Plaintiff's cell with Officer Dunn. He alleges that the officers then sprayed Plaintiff with mace and punched him in his ribs, stomach and head. After dragging him from his cell, Plaintiff alleges that Officer Wilson "smashed Plaintiff's head against the glass door in the 1C/1D corridor." (Doc. 30-12 at 4). Plaintiff also alleges that while he was in the infirmary, a "John Doe officer came into the room and tightened the handcuffs to the point where it cut off circulation in Plaintiff's writs." (*Id.*) Finally, Plaintiff alleges that the officers "unlawful behavior resulted in Plaintiff getting a concussion." (*Id.*)

In granting summary judgment to the state agency, the state court analyzed Plaintiff's claims for "assault" under Ohio law, as well as under alternative theories that

8

"unnecessary or excessive force against an inmate may state claims for battery and/or negligence." (Doc. 30-12 at 6, quoting *Brown v. Dept. of Rehab. & Corr.,* No. 13AP-804, ¶13, 2014 WL 1813003 (Ct. App. April 29, 2014). The state court held that the Ohio Department of Rehabilitation and Correction was entitled to judgment as a matter of law on all three claims (assault, battery and negligence), based upon the evidence submitted by the Defendant, which included multiple affidavits by the officers and medical staff involved.

> Based upon the uncontroverted affidavit testimony provided by defendant, plaintiff cannot prevail on his claim that officers used excessive force against him. Reasonable minds can only conclude that plaintiff refused orders to cuff up while in his cell, that plaintiff threw punches and fought with Dunn, Shostak, and Waddell once they entered the cell, that plaintiff violently resisted the officers' efforts to subdue him, and that plaintiff refused orders to get up and leave the cell after he was handcuffed. It must further be concluded that plaintiff was combative and made threats against Hake and Wilson as they escorted him to IHS, that he refused their orders to stop being combative and to stop pulling away, that he spit up blood while being escorted, and that he threatened to spit on Hake.
>
> It can only be concluded that, under the circumstances, the corrections officers had the lawful authority and privilege to use such force as may have reasonably appeared necessary under the circumstances to control or subdue plaintiff fin light of his refusals to obey orders, and to defend themselves or others from physical attack or threat of physical attack. It must also be concluded that the degree of force used by the corrections officers was indeed justified and privileged, and satisfied the duty of reasonable care.
>
> Finally, to the extent that plaintiff's complaint includes a request that "immunity determinations be made against all involved agents" or employees of defendant, no evidence has been presented from which a trier of fact could reasonably conclude that personal liability may be imposed pursuant to R.C. 2743.02(F) and 9.86.

(Doc. 30-12 at 11).

The undersigned agrees with Defendants herein that, notwithstanding the fact that Plaintiff has asserted a new theory of liability in this Court under §1983, collateral estoppel requires dismissal of this lawsuit. The issues underlying Plaintiff's § 1983 claims are identical to those previously presented to the state court. The factual determinations made by the state court are binding, and preclude Plaintiff's claims in this Court. *See Giron v. Corrections Corp. of America,* 191 F.3d 1281, 1286 (10th Cir. 1999)(holding that a prisoner plaintiff could not be permitted to argue that she could "establish deliberate indifference (a higher standard of proof) when she could not prove negligence (a lesser standard of proof) as to the same conduct."); *A.D. ex rel. McGhee v. Alabama Dep't of Human Servs.*, 995 F.Supp.2d 1253, 1261 (N.D. Ala. 2014)(applying collateral estoppel because defendants were found not to be negligent by state court and "cannot have acted with deliberate indifference"); *Suarez v. Camden Cnty Bd. of Chosen Freeholders*, 972 F. Supp. 269, 274 n. 6 (D.N.J. 1997)(holding in the context of a claim of deliberate indifference to serious medical needs that "[a]n inability to prove common law negligence would *a fortiori* constitute a finding that there was no Eighth Amendment deliberate indifference."); *see also generally Daubenmire v. City of Columbus,* 507 F.3d 383 (6th Cir. 2007)(plaintiffs precluded from raising certain §1983 claims where prior state court judgment based upon findings that were incompatible with claims); *compare Stemler v. Florence*, 350 F.3d 578, 587 (6th Cir. 2003) (holding that issue preclusion did not bar substantive due process claim where contrary state court finding was merely dictum, and not actually "necessary" to its judgment).

Based upon the state court records submitted by Defendants, it appears that Plaintiff actually litigated the same issues in state court, and lost. The state court found that the correctional officers did not objectively or subjectively engage in any conduct that amounted to the intentional torts of assault or battery, and further did not violate any duty of care to Plaintiff that would constitute even mere negligence. Instead, the court determined that the "degree of force used by the corrections officers was … justified and privileged, and satisfied the duty of reasonable care" as a matter of law. The state court's findings were "necessary" to its judgment, and that judgment precludes the possibility of any recovery under a new theory that the same conduct by the same officers violated the Eighth Amendment.

### 3. The *Leaman* Doctrine

The final procedural argument presented by Defendants is that Plaintiff should be barred from bringing his claims in this Court under the doctrine set forth in *Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987) *(en banc)*, *cert. denied*, 487 U.S. 1204 (1998), in which the Sixth Circuit held that a plaintiff who first files in the Ohio Court of Claims is barred from any federal suit seeking monetary damages for the same conduct against an individual state officer or employee under 42 U.S.C. §1983. Although the undersigned recommends that judgment be granted in Defendants' favor on the basis of collateral estoppel, the undersigned writes briefly to explain why the application of the *Leaman* doctrine is not persuasive.

In *Leaman*, the *c*ourt explained that O.R.C. § 2743.02(A)(1) constitutes "Ohio's statutory offer to subject itself to suit in the Court of Claims in exchange for a waiver of claims against individual state officials." Thus, under the doctrine, Plaintiff's decision to

sue the ODRC in the Ohio Court of Claims would constitute a waiver of his right to sue the individual officers in federal court under §1983 for the same conduct. *See id.* at 957; *see also Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 460 (6th Cir. 1998) (dismissing a plaintiff's request for monetary relief when she filed an identical complaint in the Ohio Court of Claims after initiating a federal lawsuit); *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995) (same).

A critical element to the application of the *Leaman* doctrine, however, requires that the waiver be knowing and voluntary. Thus, as the district court explained in *Williams v. Smith*, 2006 WL 2192470, at *10 (S.D.Ohio, 2006):

> Before the Court may grant the motion to dismiss….federal claims against the Individual Defendants on wavier grounds, the Sixth Circuit implicitly requires the Court to make a finding as to whether Williams "knowingly, voluntarily, and intentionally" waived his right to proceed in federal court against the Individual Defendants.

*Id.*; *see also Smith v. Duncan,* 98 F.3d 1342 (6th Cir.1996) (unpublished, text available at 1996 WL 583413, at *1, finding, based on the lack of contrary evidence presented by defendants that prisoner plaintiff's voluntary dismissal of his state court suit showed that he was not aware of the waiver); *Kajfasz v. Haviland,* No. 01-3606, 55 Fed. Appx. 719, 721-722 (6th Cir. Jan. 15, 2003) (remanding for a determination of whether plaintiff acted knowingly, intelligently, and voluntarily when she filed suit in the Court of Claims).

Here, Defendants have offered little evidence that Plaintiff's alleged waiver was knowing, intelligent, and voluntary. Defendants do not claim, for example, that Plaintiff is a particularly experienced pro se litigant. *See e.g., Easley v. Bauer,* Case No. 1:07-cv-37-SJD, 2008 WL 618642, at *1 (S.D. Ohio Feb. 29, 2008) (prisoner plaintiff who had filed up to ten other pro se actions was experienced litigant and waived his federal right

of action); *Williams v. Smith,* 2006 WL 2192470 at **10-11 (S.D. Ohio Aug. 1, 2006) (pro se plaintiff involved in at least three lawsuits based upon the same alleged facts indicated an "above-average understanding of the law for a pro se litigant" and therefore supported application of the waiver). *McDougald v. Ahmed*, Case No. 1:16-cv-500 (S.D. Ohio April 26, 2017) (R&R adopted 9/8/17*).*

Therefore, the undersigned finds a genuine issue of material fact remains as to whether any *Lehman* waiver could be upheld as knowing, intelligent and voluntary in this case.

### 4. Underlying Eighth Amendment Claims and Qualified Immunity

In addition to the three procedural arguments discussed above, Defendants present two additional arguments in favor of summary judgment that rely on multiple evidentiary exhibits submitted by Defendants, including affidavits, DVR footage, and investigatory reports. Defendants argue that the evidence submitted shows the absence of any disputed issue of material fact on the underlying Eighth Amendment claims, such that they are entitled to judgment as a matter of law on the merits of those claims, and on qualified immunity. Plaintiff's response in opposition argues that a genuine issue of material fact remains that should permit him to proceed to trial.[3]

Based upon the clear procedural bar of collateral estoppel, the undersigned finds it inappropriate to reach these alternative arguments on the merits of Plaintiff's claims.

---

[3]Plaintiff made similar arguments in an earlier motion in which Plaintiff sought summary judgment on grounds that a Use of Force report found that two discrete acts by Defendant Wilson (thrusting Plaintiff into the wall in the hallway and administering a knee strike) were not "justified." The same report concluded that all other force was "justified." This Court denied Plaintiff's earlier motion. (Docs. 22, 36).

### III. Conclusion and Recommendation

Because this federal lawsuit is barred by the doctrine of collateral estoppel, **IT IS RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 30) be **GRANTED**, that judgment be entered in favor of the Defendants, and that this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBERT BATES,

    Plaintiff,

v.

ROMAN SHOSTAK, et al.,

    Defendants

Case No. 1:16-cv-534

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).